**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**1:09cv166**

| | | |
|---|---|---|
| **CYNTHIA LOUISE FISCHER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **Vs.** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the court pursuant to 28, United States Code, Section 636(b), a specific Order of referral of the district court, and upon plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Judgment on the Pleadings.[1] Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and recommendation.

## FINDINGS AND CONCLUSIONS

### I.     Administrative History

Plaintiff filed an application for a period of disability and Disability Insurance Benefits as well as an application for Supplemental Security Income benefits in 2005.

---

[1]     Inasmuch as plaintiff has moved under Rule 56, Fed.R.Civ.P., and defendant has moved under Rule 12, the court will apply the Rule 56 standard.

1

Plaintiff's claim was denied both initially and on reconsideration; thereafter, plaintiff requested and was granted a hearing before an administrative law judge ("ALJ"). After conducting a hearing, the ALJ issued a decision which was unfavorable to plaintiff, from which plaintiff appealed to the Appeals Council. Plaintiff's request for review was denied and the ALJ's decision affirmed by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, plaintiff timely filed this action.

## II.     Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced, as necessary, in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion," <u>Richardson v. Perales</u>, <u>supra</u>. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. <u>Hays v. Sullivan</u>, <u>supra</u>.

## IV.    Substantial Evidence

### A.    Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the extensive and detailed decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had he been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The undersigned finds that it is.

### B.    Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

   a.    An individual who is working and engaging in substantial gainful
         activity will not be found to be "disabled" regardless of medical findings;

b.    An individual who does not have a "severe impairment" will not be found to be disabled;

c.    If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d.    If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e.    If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. 404.1520(b)-(f). In this case, the Commissioner determined plaintiff's claim at the fourth step of the sequential evaluation process, finding plaintiff had the residual functional capacity to perform past relevant work.

## C.    The Administrative Decision

The Administrative Law Judge (hereinafter "ALJ") issued his decision on April 23, 2008, finding that plaintiff was not "disabled," as defined by the Act, from January 31, 2005, through the date of his decision. Tr., at 6-24. At step one of the Sequential Evaluation Process (discussed above), the ALJ found that plaintiff worked in 2006 as a cashier and in 2007 as a customer service representative. Tr., at 11.[2] At

_____

[2]    Despite evidence of what may have been considered substantial gainful activity, the ALJ did not deny plaintiff's

Step Two he found that plaintiff's Fibromyalgia (of the back and lumbar spine) and bipolar disorder were severe impairments. Tr., at 12. At Step Three, however, the ALJ determined that none of plaintiff's impairments, or combination thereof, met or medically equaled any impairment in the Listing of Impairments, see 20 C.F.R. 404, subpart P, Regulation 4, Appendix 1. Tr., at 26.

At Step Four, the ALJ assessed plaintiff's RFC and found that she retained the capacity to stand for six out of eight hours, walk a maximum of six out of eight hours in a workday, to sit a maximum total of six hours in a workday, and to lift and carry a maximum of ten pounds frequently and a maximum of twenty pounds occasionally. He further found that plaintiff could do frequent climbing, balancing, stooping, kneeling, crouching, and crawling, simple one-to-two step tasks in a low stress environment, but to accommodate such requirement of low stress, such work must be in a non-production work environment with only occasional public contact. Tr., at 18. The ALJ also considered plaintiff's testimony regarding her impairments' severity and her resulting functional limitations. He deemed this testimony not entirely credible, Tr., at 19- 23, and then fully explained his reasons for not fully crediting plaintiff's testimony. At step four, based on vocational expert testimony, the ALJ found that plaintiff could perform her past relevant work as a medical records clerk. Tr., at 23.

---

request based on such work, but continued on to Step Two of the
sequential evaluation process.

The ALJ concluded that plaintiff was not under a "disability," as defined by the Act, from January 31, 2005,through the date of his decision. Tr., at 23.

### D. Discussion

#### 1. Plaintiff's Assignments of Error

Plaintiff has made the following assignments of error:

I. **The ALJ failed to apply the law of this circuit to the prejudice of the plaintiff in evaluating the effect of her disabling pain; (Plaintiff's Brief, at 9)**

II. **ALJ Wilson erred, to the prejudice of the Plaintiff, when he refused to recognize that the continuing bi-polar illness from which the Plaintiff suffers massively limits both her activities of daily living and her ability to engage in substantial, gainful activity; (Plaintiff's Brief, at 10) and**

III. **ALJ Wilson further erred in his refusing to accept the opinion of Mr. Edwards, the vocational consultant, who stated, in response to ALJ Wilson's hypothetical number two, that the hypothetical individual would be able to miss various times from work at the sole discretion of the hypothetical individual, and in response to the hypothetical Mr. Edwards stated there would be no work for that individual; (Plaintiff's Brief, at 10).**

Plaintiff's assignments of error will be discussed *seriatim*.

#### 2. First Assignment of Error

In her first assignment of error, plaintiff asserts that the ALJ failed to apply the law of this circuit to the prejudice of the plaintiff in evaluating the effect of her disabling pain. Plaintiff's Brief, at 9. Such assignment of error is clearly without legal or factual merit inasmuch as the ALJ properly recited the applicable pain standard in his decision, <u>see</u> Tr., at 19, and then properly applied such statement in his evaluation of the evidence. <u>See</u> Tr., at 11-15.

Plaintiff's claim for benefits includes allegations of pain or other subjective complaints. The correct standard and method for evaluating claims of pain and other subjective symptoms in the Fourth Circuit has developed from the Court of Appeals' decision in <u>Hyatt v. Sullivan</u>, 899 F.2d 329 (4th Cir. 1990)(<u>Hyatt III</u>), which held that " [b]ecause pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." <u>Id</u>., at 336. A two-step process for evaluating subjective complaints was developed by the appellate court in <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996), and is now reflected in Social Security Ruling 96-7p.[3]

---

[3] "The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision." S.S.R. 96-7p (statement of purpose).

Craig requires that the Commissioner apply a two-step analysis when assessing the credibility of a claimant's subjective complaints of pain. See 20 C.F.R. § 416.929. In conducting the two-step Craig analysis, Step One requires the ALJ to determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant" Craig, at 594. Once a medical impairment is identified by the ALJ in Step One that could reasonably be expected to produce the pain or other subjective complaint asserted, the intensity and persistence of that pain is evaluated by the ALJ along with the extent to which such pain or other subjective complaint limits claimant's ability to engage in work. Id.; see also 20 C.F.R. § 416.929(c). Once the ALJ progresses to Step Two, he or she considers the following factors, which include: (1) plaintiff's testimony and other statements concerning pain or other subjective complaints; (2) plaintiff's medical history; (3) any laboratory findings; (4) objective medical evidence of pain if any; (5) the plaintiff's activities of daily living; and (6) any course of treatment the plaintiff has undergone to alleviate pain. Craig, supra, at 595.

The undersigned has closely read the ALJ's recitation of the applicable standard and his application of the standard to the evidence of record. In what is both a

thoughtful and most thorough analysis, the ALJ has properly considered plaintiff's

subjective symptoms, including complaints of pain.

Plaintiff takes particular issue with the ALJ's determination that while

plaintiff's

> medically determinable impairments could reasonably be expected to
> produce the alleged symptoms, [her] statements concerning the intensity,
> persistence, and limiting effects of those symptoms are not entirely
> credible.

Tr., at 23.  In a conclusory assertion, plaintiff argues that such finding demonstrates

the ALJ's failure "to evaluate the evidence of [her] pain . . . as the case law of this

Circuit requires." Plaintiff's Brief, at 9.  In Hatcher v. Secretary, 898 F.2d 21, 23 (4th

Cir. 1989), the Court of Appeals for the Fourth Circuit held that

> it is well settled that: "the ALJ is required to make credibility
> determinations--and therefore sometimes make negative determinations--
> about allegations of pain or other nonexertional disabilities. . . . But such
> decisions should refer specifically to the evidence informing the ALJ's
> conclusion. This duty of explanation is always an important aspect of the
> administrative charge, . . . and it is especially crucial in evaluating pain,
> in part because the judgment is often a difficult one, and in part because
> the ALJ is somewhat constricted in choosing a decisional process."

Id., (quoting Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985) (citations

omitted)).  The ALJ has properly applied the relevant case law and has fully justified

his decision to not fully credit plaintiff's testimony by specifically referring to the

evidence informing his conclusion.  Id.   By way of example, the ALJ states:

> In assessing credibility, I note that the evidence shows that, at times, the claimant was non-compliant with treatment.

Tr., at 11.  The ALJ goes on to provide specific and extensive instances of plaintiff's non-compliance.  Tr., at 11-12.  The ALJ goes on to discuss why he found plaintiff to be less than credible in her testimony concerning disabling pain:

> After weighing the extensive list of rather normal findings noted above against the claimant's subjective complaints, I find that her credibility is lacking.  Furthermore, her history of substance abuse and drug-seeking behavior (more on this below) raise questions about her motivation and further erodes her credibility.

Tr., at 20.  The ALJ, again, goes on to fully explain the evidence which informed such conclusion.  Tr., at 20-22.

As discussed above, the ALJ concluded that plaintiff's testimony concerning subjective complaints of pain was not fully credible when viewed in light of the medical records, list of prescription medications, her failure to kept such prescriptions filled, and her own testimony concerning daily activities. The ALJ clearly did not rely on the absence of objective medical proof of pain, rather, after reviewing the medical evidence, he considered plaintiff's daily activities, including her daily medications, in determining whether plaintiff's testimony was credible.   In considering an almost identical method of evaluating pain in Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994), Honorable K. K. Hall, Circuit Judge, in announcing and concurring in the judgment of the Court of Appeals for the Fourth Circuit, held:

> This refreshing mode of analysis is precisely what I believe our cases have been striving for. The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life.

Id., at 927. In accordance with Mickles, the ALJ properly discredited plaintiff's subjective complaints of pain. Substantial evidence supports the ALJ's determinations.

### 3.    Second Assignment of Error

Plaintiff next argues that ALJ Wilson erred, to the prejudice of the plaintiff, when he refused to recognize that "the continuing bi-polar illness from which the plaintiff suffers massively limits both her activities of daily living and her ability to engage in substantial, gainful activity." Plaintiff's Brief, at 10. At Step Two, the ALJ found that plaintiff's Fibromyalgia (back and lumbar spine) and bipolar disorder were severe impairments. Tr., at 12. At Step Three, the ALJ determined that none of plaintiff's impairments, or combination thereof, met or medically equaled any impairment in the Listing of Impairments, see 20 C.F.R. 404, subpart P, Regulation 4, Appendix 1. Tr., at 26. Plaintiff takes issue with the ALJ not affording great weight to the supportive opinion of medical professionals. Plaintiff's Brief, at 10.

Plaintiff argues that the ALJ erred by failing to afford controlling weight to a joint medical opinion from Dr. Harry Taub and Ms. Mary Martin, a nurse practitioner. The administrative record contains a mental-medical source opinion from Nurse Martin dated August 14, 2007. Tr., at 578-80. Dr. Taub concurred with Nurse

Martin's findings. Tr., at 565. Dr. Taub and Nurse Martin are jointly of the opinion that plaintiff is able to function satisfactorily in almost all inquired aspects of understanding and memory, sustained concentration and persistence, social interaction, and adaptation. Tr., at 578-80. They also opine, however, that plaintiff's ability in the following areas would be severely limited but not precluded: performing activities within a schedule; maintaining regular attendance; being punctual within customary tolerances; completing a normal workday and workweek without interruptions from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; and setting realistic goals or make plans independently of others. Id. Nurse Martin and Dr. Taub then conclude that plaintiff's mental impairments meet the requirements of Listings 12.02, "Organic Mental Disorders"; 12.04, "Affective Disorders"; and 12.08, "Personality Disorders." Tr., at 581-95. Plaintiff argues that the ALJ erred in failing to afford controlling weight to this opinion, Plaintiff's Brief, at 10, but fails to provide the court with any underlying rationale. As shown below, the applicable standard does not require the ALJ to *demur*e to even a treating physician's determination that a person is disabled, as disability under the Act is essentially a vocational determination informed by evidence that includes medical opinions.

Even if these medical sources were a treating physician and nurse practitioner (a treating physician is a physician who has observed the plaintiff's condition over a prolonged period of time, <u>Mitchell v. Schweiker</u>, 699 F.2d 185, 187 (4th Cir. 1983)), the opinion of a treating physician is only entitled to controlling weight if it is supported by "clinical and laboratory diagnostic techniques," and is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2).

> If a physician's opinion is not given controlling weight, then the "factors listed below" and in paragraphs (d)(3) through (5) used to determine the amount of weight to be given it are (1) the length of the treatment relationship and the frequency of examination ("the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion"); (2) the nature and extent of the treatment relationship; (3) supportability ("the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion"); (4) consistency ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); and (5) specialization ("[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"). <u>Id.</u> The regulation also makes clear, however, that the ultimate determination of disability is reserved for the Commissioner, and "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 416.927(e)(1).

<u>Pittman v. Massanari,</u>141 F.Supp.2d 601, *608 (W.D.N.C. 2001)(Horn, C.M.J.).

Here, the ALJ, again, correctly evaluated such medical source opinion and fully

satisfied his obligation of explaining why he did not give such opinion controlling weight.

The ALJ reasoned that the evidence of record is inconsistent with Dr. Taub's and Nurse Martin's joint opinion. Tr.,17-18. The ALJ first notes that plaintiff had a normal mental status exam on July 20, 2006. Tr., at 18. Second, he notes that when seen at *New Vistas* on October 18, 2006, and October 23, 2006, plaintiff's cognition was grossly normal. Id. Third, the ALJ notes that on November 2, 2006, her judgment and insight were appropriate, memory was grossly intact for recent and remote events, and she was oriented. Id. Fourth, the ALJ notes that on January 4, 2007, plaintiff's judgment and insight were again appropriate, memory was again intact, and she was once again deemed oriented. Id. Fifth, the ALJ notes that on February 2, 2007, plaintiff's mental status was normal. Tr., at 18. Sixth, on April 17, 2007, plaintiff's affect was normal. Id. Seventh, the ALJ notes that on July 12, 2007, plaintiff reported that she had a boyfriend whom she met over the internet. Id. Based on such findings, which find specific support in the administrative record as noted by the Commissioner, the ALJ concludes that each of these pieces of evidence is inconsistent with the Listing Level functional limitations found by Dr. Taub and Nurse Martin. Id. The ALJ has fully complied with the prevailing reasoning of this court in Pittman v.

_Massanari_, _supra_, and plaintiff fails to address in what manner she believes the ALJ's conclusions are deficient or fail to comply with prevailing law.

Likewise, Dr. Taub and Nurse Martin's joint opinion is also premised upon a conclusion, unsupported or explained by any medical tests or findings, that plaintiff's mental impairments cause marked levels of limitations in the following areas: activities of daily living; social functioning; and concentration, persistence and pace. Tr., at 591. The ALJ properly explains how such medical opinion is not only unsupported by the opining medical professionals, but also how evidence found in the administrative record supports a much lower degree of functional limitation in each of these areas. The ALJ provides citation to specific evidence supporting his findings, Tr., at 17, which is precisely what the case law requires.

The ALJ specifically considered plaintiff's activities of daily living, noting that she cooks, does dishes, and cleans her bathroom, kitchen and living room. Id. The ALJ concluded that these activities are more consistent with mild limitations rather than the functional disability plaintiff alleges. Id. Plaintiff mounts no challenge to such findings or conclusion.

The ALJ also considered evidence of record concerning plaintiff's social functioning. He noted that plaintiff testified that in the recent past she traveled three times to Florida by bus to see her son, that she takes her son to the movies, that she

reported attending church four times a month, that she visits with friends, and that she is able to go shopping, out to dinner, out to the movies, to parks, to beaches and to lakes. Id. Further, and quite relevant to social functioning, the ALJ noted that plaintiff found a new boyfriend during such period. Id. The ALJ concluded that these activities were consistent with mild limitations on social functioning and not the marked levels opined by Dr. Taub and Nurse Martin. Tr., at 17. Again, Plaintiff fails to challenge this rationale and resultant conclusion.

The ALJ also considered the evidence of record concerning plaintiff's concentration, persistence, and pace. The ALJ explained that on June 6, 2005, plaintiff was able to calculate by serial 3's, was able to solve various arithmetic problems correctly, and she could repeat 5 random numbers forward and 4 backwards. Id. On the same date, the ALJ found plaintiff had no severe impairments in attention, concentration or memory. Id. The ALJ also pointed out that while plaintiff was at Morton Hospital and Compass Adult Care, it was noted that her concentration was intact and normal. The ALJ concluded that this evidence was consistent with a moderate level of functional limitation in this area, as opposed to the marked level opined by Dr. Taub and Nurse Martin. Tr., at 17. Again, Plaintiff fails to challenge this rationale and resultant conclusion.

Plaintiff's argument does, in relation to the third assignment of error, cite to the fact that her treating sources have assessed her "Global Assessment of Functioning" ("GAF") score at 50, but such score does not in and of itself provide the clinical findings needed to support the marked levels of limitation opined by Dr. Taub and Nurse Martin.  Put another way, a GAF score of 50 does not, alone, trump substantial evidence indicating mild limitations on functioning.  Although a person having one of the "serious symptoms" identified in the GAF scale of the DSM-IV, including being "unable to keep a job," may be rated with a GAF of fifty, there is no reciprocal requirement that a person with a GAF of 50 is unable to meet the basic mental demands of competitive remunerative unskilled work. Seymore v. Apfel, 131 F.3d 152 (10th Cir.1997)(GAF of 45, standing alone, "does not evidence an impairment seriously interfering with claimant's ability to work").

Substantial evidence, which the ALJ referenced, supports the minimal weight afforded to this medical source opinion.

## 4.    Third Assignment of Error

In her third assignment of error, plaintiff contends that the ALJ further erred in his refusing to accept the opinion of Mr. Edwards, the vocational consultant, who stated, in response to ALJ Wilson's hypothetical number two, that the hypothetical individual would be able to miss various times from work at the sole discretion of the

hypothetical individual, and in response to the hypothetical Mr. Edwards stated there would be no work for that individual. Plaintiff's Brief, at 10.

Hypothetical questions posed by an ALJ to a vocational expert must fully describe a plaintiff's impairments and accurately set forth the extent and duration of the claimant's pain, if any. Cornett v. Califano, 590 F.2d 91 (4th Cir. 1978). Where the ALJ properly formulates his hypothetical to accurately reflect the condition and limitations of the claimant, the ALJ is entitled to afford the opinion of the vocational expert great weight. Shively v. Heckler, 739 F.2d 984 (4th Cir. 1984). The second hypothetical, to which plaintiff refers in her assignment of error, appears to be a hypothetical formulated by the ALJ in the alternative.

First, the ALJ asked the VE if a hypothetical individual could perform any of plaintiff's past relevant work given the functional limitations imposed by her RFC as assessed by the ALJ. Tr., at 1220-21. The VE testified that given the assessed RFC such a hypothetical individual could perform plaintiff's past relevant work as a medical records bundler. Id. Vocational expert testimony as to what work an individual can perform constitutes substantial evidence in support of the Commissioner's decision when, as here, it is given in response to a hypothetical question based on an accurate RFC. Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir.

1989).   Based on such expert testimony, the ALJ concluded that plaintiff is capable of performing her past relevant work and therefore not disabled.  Tr., at 23.

The second hypothetical involved limitations, suggested by plaintiff, that were not ultimately accepted by the ALJ.  Specifically, plaintiff asserts that in response to a second hypothetical describing an individual requiring the need to miss various times from work at their own discretion, the VE concluded that such a limitation would preclude all work.  Tr., at 1221.   The RFC ultimately found by the ALJ does not, however, include a need to miss various times from work at her sole discretion.  Rather than an attack on the VE's opinion, or an ALJ's lack of acceptance of such opinion, plaintiff's argument is instead an assignment of error as to the RFC assigned by the ALJ.

The ALJ is solely responsible for determining the RFC of a claimant.  20 C.F.R. § 404.1546(c).  In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments.  S.S.R. 96-8p.  Inasmuch as RFC is determined at or immediately before the fourth step of the sequential evaluation process, the burden is on the claimant to establish that he or she suffers from a physical or mental impairment which limits functional capacity.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir.  1981).

Here, plaintiff testified that on occasion she has had to miss work when she is upset, stressed, or in pain.  Tr., at 1204. This testimony does not in-and-of itself merit inclusion in the ALJ's RFC.  That people call in sick on occasion is not synonymous with "a need to miss work at will." Plaintiff points to no evidence that her absences were excessive or that they were in fact of medical necessity.  An ALJ is not obliged to accept as true a claimant's self-serving, subjective statements, <u>Anderson v. Sullivan</u>, 914 F.2d 1121, 1124 (9th Cir. 1990), and the ALJ, as already explained, had articulable reasons to not fully credit her testimony.  To the extent plaintiff argues that her problems manifested themselves in the work environment when she was short with a customer, plaintiff's assessed RFC limits plaintiff to only occasional public contact and the her past relevant work requires no interaction with the general public. Tr., at1221.  The ALJ quite properly did not include a need to miss work at will in his RFC.

Further the records plaintiff references from her current employer also do not support the degree of functional limitation that she insists the ALJ should include in her assessed RFC.  <u>See</u> Plaintiff's Brief, at 10, therein citing Tr., at 153-54. Such documents indicate that she was tardy to work six times in a five month period. <u>Id.</u> Such evidence would not, however, support a conclusion that plaintiff needs to miss work at her sole discretion.  Indeed, her own employer only required verbal

counseling for such errors and warned that failure to correct would only result in additional corrective counseling, not separation. Tr., at 153. At most, such evidence could have supported plaintiff asking the VE if being late for work roughly one a month would preclude all work, but she did not propose that question. See Tr., at 1221. Being late for work, or even missing work 12 days a year due to illness, would not, in any event, logically preclude a person from all work. Such evidence does not, in any event, support a limitation of being able to miss work at will. Even if it was error for the ALJ not to include such periodic tardiness in the hypothetical relied on, it is not a basis for upsetting the decision of the Commissioner as the ALJ's hypothetical reasonably incorporated the limitations he found to be present and plaintiff, who was represented by counsel at the hearing, had an opportunity to correct any purported deficits in the hypothetical. Shively v. Heckler, 739 F.2d 987, 990-991 (4th Cir. 1985). Substantial evidence supports the ALJ's RFC assessment. .

**E.     Conclusion**

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See Richardson v. Perales, supra; Hays v. Sullivan, supra. Finding that there was "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion," <u>Richardson v.</u>
<u>Perales</u>, <u>supra</u>, the undersigned must recommend to the district court that plaintiff's
Motion for Summary Judgment be denied, the Commissioner's Motion for Summary
Judgment be granted, and that the decision of the Commissioner be affirmed.


## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that

(1)   the decision of the Commissioner, denying the relief sought by plaintiff,
       be **AFFIRMED**;

(2)   the plaintiff's Motion for Summary Judgment be **DENIED**;

(3)   the Commissioner's Motion for Judgment on the Pleadings be
       **GRANTED**; and

(4)   this action be **DISMISSED**.


## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section
636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the
findings of fact, conclusions of law, and recommendation contained herein must be
filed within **fourteen (14)** days of service of same.  **Responses to the objections**

**must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>reh'g denied</u>, 474 U.S. 1111 (1986); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir.), <u>cert. denied</u>, 467 U.S. 1208 (1984).

Signed: July 21, 2010

Dennis L. Howell
United States Magistrate Judge